ROBERT F. FOX, Appellant, *v.* THE STATE OF
NEVADA, Respondent.

No. 3836

October 18, 1957                              316 P.2d 924

(Petition for rehearing denied December 19, 1957.)

*Bert Goldwater,* of Reno, for Appellant.

*A. Dyer Jensen,* District Attorney, Washoe County;
*Emile J. Gezelin,* Assistant District Attorney, of Reno;
*Harvey Dickerson,* Attorney General, of Carson City, for
Respondent.

# OPINION

By the Court, MERRILL, J.:

This is an appeal from judgment of conviction of the crime of first degree murder for which, pursuant to jury verdict, the appellant has been sentenced to suffer the death penalty. The defense, in substance, was that of temporary insanity.

The sole assignment of error is failure of the trial court to give the following instruction: "It is a well settled rule of law that insanity is no excuse for the commission of a crime unless there exists such defect of reason that the person charged did not know the nature and quality of his act, or, if he did know it, that he did not know he was doing what was wrong. In other words, a person may be insane and still responsible for his acts. However, evidence of insanity, which does not

relieve the defendant of his guilt, may still be considered by the jury for the purpose of determining the degree of the crime. In other words, the evidence of insanity may be considered by you on the issues of malice, premeditation, deliberation and intent, and may reduce the grade of the offense charged."

This instruction incorporates the so-called doctrine of diminished or partial responsibility which has been expressly rejected in this State. State v. Skaug, 63 Nev. 59, 161 P.2d 708, 163 P.2d 130; State v. Fisko, 58 Nev. 65, 70 P.2d 1113. In the latter case, 58 Nev. 65, 78, 70 P.2d 1113, 1118, it was stated, "If by reason of insanity appellant did not know the nature and quality of his act, and that it was wrong, he was absolved from all guilt; otherwise in whatever lesser degree his mind may have been affected by drink or other cause, he is amenable to punishment as one of normal mind." This portion was quoted in State v. Skaug, supra, 63 Nev. 68, 161 P.2d 712.

Notwithstanding these decisions we have, in conjunction with our opinion in State v. Sollars filed this day, 73 Nev. 248, 316 P.2d 917, determined to reexamine the law of this state respecting criminal responsibility and the definition of insanity as a criminal defense. Counsel in both cases were advised of our decision and, through the filing of extensive briefs, have greatly aided this court in its study of the problem. In the Sollars case we have reexamined and have retained the right-and-wrong test as applied since State v. Lewis, 20 Nev. 333, 22 P. 241, and have considered and rejected the so-called "irresistible impulse" test. In the instant case we adhere to our rule rejecting the doctrine of partial responsibility.

Support for the partial responsibility doctrine comes through analogy with the rule applicable in cases of intoxication to the effect that evidence of intoxication may be considered for the purpose of determining whether it was such as "so clouds the mind * * * as to interfere with the formation of deliberate and premeditated purpose to kill." State v. Jukich, 49 Nev. 217, 238;

242 P. 590, 598. State v. Johnny, 29 Nev. 203, 223; 87 P. 3. It is contended that if cloudiness of mind is a proper consideration in cases of voluntary drunkenness it must certainly be proper in cases of mental illness.

In our view the analogy to intoxication cases is not valid. In State v. Johnny, supra, this court approved an instruction which emphasized the degree of "cloudiness of mind" which is necessary if the capacity to premeditate is to be held affected. The instruction stated, 29 Nev. 203, 222, 87 P. 3, 9, "You should discriminate between the conditions of mind merely excited by intoxicating drink and yet capable of forming a specific and deliberate intent to take life, and such a prostration of the faculties as renders a man incapable of forming the intent, or of deliberation or premeditation."

A mind so prostrated by disease as to be unable to formulate an intent or to deliberate or premeditate is a mind unable to know the nature and quality of a criminal act or that the act was wrong. It is an insane mind under our definition of insanity. In such a case the defendant is entitled not to a reduction in the degree of crime (as in the intoxication cases) but to outright acquittal. By the same token, a mind capable of knowing right from wrong must be regarded as capable of entertaining intent and of deliberating and premeditating. We may note that acquittal by reason of insanity in Nevada results in commitment to the State Hospital. NRS 175.445. If it be held that mental illness not sufficient to constitute insanity may destroy one's capacity to premeditate, it may as reasonably be held to destroy one's capacity to entertain intent. This could well result in verdicts of outright acquittal. The public protection provided by commitment would be lost, although the acquittal was predicated upon lack of capacity, that is upon mental illness against which the public should have protection.

The rule of partial responsibility, by a confusion of

terms all having to do with mental or intellectual capacity, would seem simply to extend the area within which the conscience of a jury may act upon what it regards to be mitigating circumstances. By statute mitigation is available to the jury only within the area of first degree murder where assessment of punishment by the jury is proper. Reduction in degree of the crime is not available to the jury upon the basis of mitigating circumstances but only upon the basis of lack of proof of the elements of the crime as fixed by law. State v. Skaug, supra.

We conclude that the rejection of the doctrine of partial responsibility was proper.

Defendant contends that even eliminating the issue of insanity, the offered instruction was proper on the issue of premeditation; that this is an issue he is entitled to raise entirely apart from that of insanity and as though the defense of insanity were not involved; that by the court's refusal to give the offered instruction he has been precluded from asserting lack of premeditation. He relies upon People v. Wells, 33 Cal.2d 330, 202 P.2d 53.

The court in that case was concerned with the exclusion of evidence, not of insanity but of mental disorder short of insanity. The court expressly rejected the doctrine of partial responsibility but held the evidence of mental disorder admissible as material to a finding of malice. The court said, 202 P.2d 53, 69: "Here, the offer was to show not insanity, not a lack of mental capacity to have malice aforethought, but, rather, the fact of nervous tension and that the particular tension was directly relevant to the issue of 'purpose, motive, or intent'; i.e., to the critical question as to whether defendant's overt act was done with 'malice aforethought' or was actuated by fear, genuine although unfounded in ultimate truth."

We do not dispute the California holding. The problem

there dealt with the exclusion of material evidence. In the instant case all evidence of mental disorder was admitted and was available to the jury together with all other material evidence for its consideration of the state of mind of the defendant at the time of the homicide. We note first that a study of the instructions as a whole convinces us that failure to give the questioned instruction did not preclude such consideration by the jury.

Further, the Wells case (as quoted) properly lays emphasis upon the distinction between the issue of capacity to entertain malice and the question whether malice in fact was entertained. This distinction applies in the instant case.

We are here concerned with two separate factual issues. (1) Was the mind of the defendant capable of premeditating? This is the "capacity" issue upon which we have, earlier in this opinion, rejected the doctrine of partial responsibility. (2) Assuming that the defendant was capable of premeditating, did he in fact premeditate? This is the "state-of-mind" issue. Upon this issue all material evidence may be considered—evidence of what the California court has referred to as "tensions", including the evidence of mental disorder. But *all* evidence *must* be taken into consideration. And it must show something more than mental disorder. If evidence of mental disorder alone is to preclude premeditation it must be such as affects capacity. Otherwise we have by circuitous reasoning placed upon the State the burden of disproving mental disorder beyond a reasonable doubt. Upon the state-of-mind issue it is the tensional circumstances of the case viewed in the light of the evidence of mental disorder which are the proper concern of the jury. The issue is whether those circumstances, so viewed, raise reasonable doubt that the mind, although capable of premeditating, did in fact premeditate.

In presenting these issues to the jury they should be carefully differentiated. Otherwise confusion is bound to result for, at best, confusion is implicit in the situation. It will not do, upon the first issue, to present conflicting and confusing instructions which in effect say

247

that although the defendant had mental capacity to premeditate, yet the jury in conscientious judgment may find that he had not such capacity.

The instruction with which we are here concerned was not a "state-of-mind" instruction, addressing itself to the second issue. Rather, read as a whole, it was a "capacity" instruction. It confined itself to evidence of capacity and invited a reduction of sentence upon the basis of such evidence alone. To say that "evidence of insanity * * * may reduce the grade of the offense" is not a true statement of the law. It is a statement of the doctrine of partial responsibility. It was not error to reject this instruction as a "state-of-mind" instruction.

Our reexamination of the Fisko and Skaug cases leads us to one further comment. In the Fisko case, 58 Nev. 65, 79, 70 P.2d 1113, 1118, this court stated, "Evidence tending to prove any * * * lesser degree [of mental disorder than insanity] is pertinent to no issue." In the light of our view that such evidence is pertinent to the "state-of-mind" issue we disaffirm that statement.

Judgment affirmed. The district court is directed to make the proper order for execution of judgment.

BADT, C. J., and EATHER, J., concur.